UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MONTREAVOUS GRAY,

        Petitioner,

v.                                      Case No. 23-cv-311-pp

BRADLEY MLODZIK,[1]

        Respondent.

---

**ORDER GRANTING RESPONDENT'S MOTION TO DISMISS *HABEAS* PETITION (DKT. NO. 13), DENYING AS MOOT PETITIONER'S MOTION TO APPOINT COUNSEL (DKT. NO. 20), DISMISSING CASE AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY**

---

      On March 8, 2023, the petitioner, who is representing himself, filed a petition for a writ of *habeas corpus* under 28 U.S.C. §2254, challenging his 2015 conviction in Milwaukee County Circuit Court for human trafficking, false imprisonment, intimidation of a victim and intimidation of a witness. Dkt. No. 1. On September 29, 2023, the respondent filed a motion to dismiss, arguing that the petition was untimely. Dkt. No. 13. The petitioner responded with an opposition brief that included a request that the court appoint him counsel. Dkt. No. 20. The court will grant the respondent's motion, deny as moot the petitioner's motion to appoint counsel, dismiss the case and decline to issue a certificate of appealability.

---

[1] Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts states that if a petitioner is in custody under a state-court judgment, the petition must name as the respondent the state officer who has custody of the petitioner. The court has changed the caption to reflect that Bradley Mlodzik currently is the warden of Waupun Correctional Institution.

1

## I.  Background

### A.  Underlying State Case

On October 16, 2014, the State of Wisconsin filed a criminal complaint against the petitioner, charging him with human trafficking, false imprisonment and kidnapping. State v. Gray, Case No. 2014CF004596 (Milwaukee County Circuit Court), Dkt. No. 14-5 at 1. On February 11, 2015, the State filed additional charges for intimidating a victim and intimidating a witness; on April 2, 2015, the circuit court judge granted the State's motion to join the two cases. State v. Gray, Case No. 2015CF000762 (Milwaukee County Circuit Court), Dkt. No. 14-4 at 1, 14. On May 1, 2015—the fifth day of a five-day trial—the jury found the petitioner guilty of human trafficking, false imprisonment, intimidation of a victim and intimidation of a witness. Dkt. Nos. 14-4 at 11-12; 14-5 at 15. On June 19, 2015, the circuit court sentenced the petitioner to concurrent terms on the human trafficking and false imprisonment convictions totaling eight years of initial confinement and ten years of extended supervision, and consecutive terms on the intimidation convictions totaling four years of initial confinement and four years of extended supervision. Dkt. No. 14-4 at 10; Dkt. No. 14-5 at 13. On June 19 and 22, 2015, the court entered the judgments of conviction. Dkt. No. 14-4 at 9; Dkt. No. 14-5 at 9.

On May 18, 2018, the petitioner appealed his convictions to the Wisconsin Court of Appeals. State v. Gray, Case Nos. 2018AP956, 2018AP957 (Wisconsin Court of Appeals), Dkt. No. 14-2 at 1. The petitioner's appellate attorney filed a no-merit report; the petitioner sought multiple extensions of his deadline to respond, and filed his response to the no-merit report on September 4, 2020. State v. Gray, Case Nos. 2018AP956, 2018AP957 (available

at https://wscca.wicourts.gov). On January 26, 2021, the court of appeals affirmed the petitioner's convictions. Dkt. No. 14-2 at 16. The petitioner then appealed to the Supreme Court of Wisconsin, which denied his petition for review on August 11, 2021. Dkt. No. 14-3. The petitioner did not appeal to the United States Supreme Court. Dkt. No. 1 at 44.

    B.    <u>*Habeas* Petition (Dkt. No. 1)</u>

The petitioner filed his federal *habeas* petition on March 8, 2023, raising ten grounds for relief which this court detailed in its August 4, 2023 screening order. Dkt. Nos. 1 at 3–44; 10 at 4–6. The grounds for relief include prosecutorial misconduct amounting to due process violations (Grounds One, Four and Five), ineffective assistance of counsel (Grounds Two, Three, Six, Seven and Ten), and insufficient evidence to support the petitioner's conviction (Grounds Eight and Nine). Dkt. Nos. 1 at 3–44; 10 at 4–6. In its screening order, the court expressed concern that the petitioner may not have timely filed the federal *habeas* petition, but allowed the petitioner to proceed beyond the screening stage because the limitation period is an affirmative defense. Dkt. No. 10 at 7–8.

    C.    <u>Respondent's Motion to Dismiss (Dkt. No. 13)</u>

On September 29, 2023, the respondent filed a motion to dismiss, asserting that the petition was barred by the one-year limitation period prescribed by 28 U.S.C. §2244(d)(1)(A). Dkt. No. 13. According to the respondent, the deadline for the petitioner to file his federal petition expired on November 9, 2022; the petitioner did not file the federal petition until four months later. Dkt. No. 14 at 4–5. The respondent argued that the petitioner's November 22, 2022 request to the court to extend his deadline to file the

*habeas* petition was untimely, because by that time the limitation period had expired. Id. at 5 (citing Dkt. No. 1-1 at 6–7).

In his opposition, the petitioner conceded that his petition was filed "four months after limitations," but argued that the court should apply the doctrine of equitable tolling. Dkt. No. 20 at 1–3. The petitioner stated that at the time he filed his brief in opposition to the motion to dismiss (December of 2023), he had been under "modified movement with limited access to services" while incarcerated in Waupun Correctional Institution. Id. at 2. He explained that Waupun had been "operating under suspended administrative code since March 19, 2020," which he argued had forced him to litigate ineffectively and had made him unable to timely file his federal *habeas* petition. Id. The petitioner pointed to "periodic staff shortages, COVID-19 shutdowns, [petitioner]'s own positive COVID-19 results, and other reasons to modify prison operations" as reasons why he "has been unable to litigate effectively." Id. The petitioner explained that his petition had been placed on a flash drive in the prison library, which meant that he couldn't access it when "legal passes [were] not being issued." Id. He said that since August 2023, he had been limited to two, one-hour digital viewing periods "per court deadline." Id. He attached to the petition documents showing that he'd made additional attempts to access the law library in October and November 2023. Id. at 2–3; Dkt. No. 20-1 at 2–3.

The petitioner recounted that Waupun has been in the national news because of the extended lockdowns, which he said "have been deemed unconstitutional, and due process violations, wherein inmates have been forced not to vindicate their constitutional rights to litigate in an effective and timely fashion, guaranteed under the 6th Amendment of the United States

4

Constitution." Id. at 2-3. He asked the court to take into account that between March 19, 2020 and August 2, 2023, he'd been deprived of his Sixth Amendment right to effectively submit his *habeas* petition. Id. at 3. The petitioner also argued that it has been impossible for him to learn the law and apply it effectively with his limited library time. Id. He reported that he had contacted three lawyers, who either did not respond to his request to represent him or who responded with questions. Id. (The petitioner attached to his petition a letter from a lawyer who asked the petitioner to advise why he had filed his petition four months late, and who had explained that "[i]t can be very difficult if not impossible to find a way around this deadline . . . ." Dkt. No. 20-1 at 4.)

The respondent replied that equitable tolling is not available because the petitioner has not shown that an "extraordinary circumstance" prevented him from filing his petition on time. Dkt. No. 23 at 2. The respondent characterized the petitioner's obstacles as "COVID-19 restrictions" and cited cases that have found that COVID-19-related restrictions are not extraordinary circumstances for the purposes of the equitable tolling doctrine. Id. at 2–3 (citing Sloan v. United States, Case No. 18-CR-40051, 2021 WL 6102164, at *3 (C.D. Ill. Dec. 23, 2021); Bradberry v. Warden, Case No. 20-CV-01760, 2021 WL 195379, at *2 (S.D. Ind. Jan. 19, 2021)). The respondent argued that the petitioner has failed to show those restrictions "prevented timely filing" rather than made "effective litigation more difficult." Id. at 3. He argued that the petitioner has not diligently pursued his rights, because his attached exhibits show his attempts to access the law library in Fall 2023, after the limitation period already had expired. Id. at 4.

## II. Analysis

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") instituted a one-year statute of limitations for petitioners seeking federal *habeas* relief. 28 U.S.C. §2244(d)(1). The one-year period begins to run from the latest of the following four events:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or law of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §2244(d)(1)(A)-(D).

The Wisconsin Supreme Court denied the petitioner's petition for review on August 11, 2021. He did not file a petition for writ of *certiorari* with the United States Supreme Court. That means that his conviction became "final"—and his one-year limitation period began to run—ninety days later, on November 9, 2021. Anderson v. Litscher, 281 F.3d 672, 675 (7th Cir. 2002) (statute of limitations begins to run "when, if certiorari was not sought, all direct criminal appeals in the state system are concluded, followed by the expiration of the time allotted for filing a petition for writ"); Supreme Court Rule 13(1) (requiring that a person must file a petition for *certiorari* within ninety days after entry of judgment). The petitioner had a year from November 9, 2021—until November 9, 2022—by which to file his federal *habeas* petition. He

6

did not file the petition until March 8, 2023—four months after his one-year limitation period expired. The petitioner concedes as much in his opposition brief. Dkt. No. 20 at 1 ("Mr. Gray filed his §2254 action on March 8, 2023, four months after limitations.").

As noted, the petitioner argues that the court should apply the doctrine of equitable tolling. A court may invoke the doctrine of equitable tolling where the petitioner shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010). "Equitable tolling is an extraordinary remedy and so 'is rarely granted.'" Obriecht v. Foster, 727 F.3d 744, 748 (7th Cir. 2013) (quoting Simms v. Acevedo, 595 F.3d 774, 781 (7th Cir. 2010)). "A petitioner bears the burden of establishing both elements of the *Holland* test; failure to show either element will disqualify him from eligibility for tolling." Mayberry v. Dittman, 904 F.3d 525 529-30 (7th Cir. 2018).

"The realm of equitable tolling is a highly fact-dependent area in which courts are expected to employ flexible standards on a case-by-case basis." Socha v. Boughton, 763 F.3d 674, 683 (7th Cir. 2014) (internal quotations omitted). Although equitable tolling is "rare" and "'reserved for extraordinary circumstances far beyond the litigant's control that prevented timely filing,'" id. (quoting Nolan v. United States, 358 F.3d 480, 484 (7th Cir. 2004)), a district court must "evaluate the circumstances holistically, considering 'the entire hand that the petitioner was dealt' rather than taking each fact in isolation." Gray v. Zatecky, 865 F.3d 909, 912 (7th Cir. 2017) (quoting Socha, 763 F.3d at 686)). A petitioner must show more than just that his circumstances "may have made it more difficult for him to file a petition for habeas corpus." Carpenter v.

Douma, 840 F.3d 867, 873 (7th Cir. 2016). "Incarceration alone, for example, does not qualify as an extraordinary circumstance." Socha, 763 F.3d at 685.

The petitioner has not shown that extraordinary circumstances prevented him from timely filing his petition. The petitioner identifies "periodic staff shortages, COVID-19 shutdowns, [petitioner]'s own positive COVID-19 results, and other reasons to modify prison operations" as reasons why he "has been unable to litigate effectively." Dkt. No. 20 at 2. Staff shortages, shutdowns, and modified prison operations are not sufficiently extraordinary to justify equitable tolling. "[A] prisoner may not rely on 'expected, albeit unpredictable' delays associated with prison life in seeking equitable tolling of AEDPA's statute of limitations." Casas v. United States, 88 F. Supp. 2d 858, 861 (N.D. Ill. 1999); Moreland v. Eplett, 18 F.4th 261, 271 (7th Cir. 2021) ("[C]ommon parts of prison life" are also not considered "extraordinary" as required to toll the limitations period). Neither is the petitioner's own illness or medical treatment, unless that illness was "severe enough to actually prevent timely filing." Carpenter, 840 F.3d at 872; Casas, 88 F. Supp. 2d at 861 (declining to toll limitations period where the petitioner was ill and in transit between various institutions and hospitals during the limitations period). The petitioner's arguments about his limited access to the law library also do not justify application of the equitable tolling doctrine. Tucker v. Kingston, 538 F.3d 732, 735 (7th Cir. 2008) (stating that "limited access to the prison law library is not grounds for equitable tolling"). And here, the petitioner contracted COVID-19 after the deadline for filing his petition had expired. The petitioner has not identified any extraordinary circumstances that prevented him from timely filing the petition.

A petitioner must show both elements of the Holland test to warrant equitable relief. Carpenter, 840 F.3d at 870. Because the petitioner has not identified any extraordinary circumstances, the court is not required to evaluate whether he was pursuing his rights diligently. But the court observes that the petitioner had over a year—between August 2021 (when the Wisconsin Supreme Court denied his petition for review) and November 9, 2022 (when the limitation period expired) to file his petition. The petitioner says that since March 19, 2020, Waupun has been operating under "suspended administrative rules," but he does not explain how that fact affected his ability to file his petition. He says that his petition was put on a flash drive in the library, which meant that he couldn't access it if legal passes weren't being issued, but he does not explain how frequently passes were being issued between August 2021 and November 2022. He says that under prison procedure, when incarcerated persons are on "modified movement," "inmates will, within a 30 day window, be scheduled once a week, for one hour, four hours total per court deadline, to litigate, reflecting the fact that it takes two weeks to be scheduled from a 45 day court deadline." Dkt. No. 20 at 2. While the court does not profess to completely understand this policy, it sounds as if between August 2021 and November 2022, the petitioner had at least four hours to work on his petition; he does not explain why he did not use that time to prepare and file his petition.

Along with his response to the motion to dismiss, the petitioner provided the court with a letter dated September 5, 2023 from Brett Helmer (the education director at Waupun), stating that Waupun had been under suspension of administrative rules since March 19, 2020, that incarcerated persons were under "modified movement," that the library and education

9

departments had been "shuttered" since March 28, 2023, and that beginning August 2, 2023, the prison would allow priority access to the library for individuals meeting the court-deadline criteria the petitioner described. Dkt. No. 20-1 at 1. The petitioner provided a notification dated December 28, 2023—over a year after his limitation deadline expired—advising him that he'd been scheduled for a law library visit on November 30, 2023. Id. at 2. He provided an October 23, 2023 information request he filed in which he advised prison staff that he had "3 week for dead line and have a lot to do." Id. at 3.

The court suspects that the reason that the petitioner filed documentation about his access to the library in *2023* is because on October 2, 2023—about three days after the respondent filed his motion to dismiss—the court sent the petitioner an order, advising him that his response to the motion to dismiss was due by November 13, 2023. Dkt. No. 15. On October 10, 2023, the court received a letter from the petitioner, telling the court that he'd never received the respondent's motion to dismiss. Dkt. No. 16 at 1. He told the court that Waupun had been on lockdown "since 3/29/23," saying that it would be impossible for him to complete a brief in response to the respondent's motion to dismiss. Id. He said that Waupun "might grant 1 hour of law library a week, with court deadline," and he emphasized that he lacked legal knowledge, saying he wouldn't have any idea how to respond to the respondent's motion given that limited time. Id. He mentioned that media in Wisconsin, as well as the New York Times, should cause the court to sympathize with his situation and to appoint him an attorney. Id. The petitioner asked the court to re-send the motion to dismiss and to appoint him a lawyer. Id. at 2. The court granted the petitioner's motion for an extension of his deadline to respond to the

10

respondent's motion to dismiss, giving him a new deadline of December 28, 2023. Dkt. No. 17.

The documentation the petitioner attached to his response to the motion to dismiss shows the limited time he had available between March 2023 (when he filed his petition) and December 2023 (when his response to the motion to dismiss was due). But the issue raised by the respondent's motion to dismiss is not whether he had sufficient time to respond to the respondent's motion to dismiss. The issue is whether the petitioner diligently pursued his rights during the time the petitioner had to *prepare and file his petition*. The issue is whether the record shows that he was diligent between August 2021 and November 9, 2022.

On March 7, 2024—about ten days after the respondent filed his reply brief, the court received a letter from the petitioner. Dkt. No. 24. The petitioner opined that the respondent's counsel had been "completely deceptive" in the reply brief. Id. The petitioner reminded the court that Waupun is a maximum security facility, where incarcerated persons are locked in their rooms "23 hours on work days [] 24 hours on weekends, if [they] are not subjected to lockdowns/shutdowns/modified movement." Id. He said that whatever one calls it—a lockdown, a shutdown, a movement modification—the status prevents incarcerated persons from moving and keeps them locked in their cells for years. Id. The petitioner also asserted that the respondent's counsel had "undermind" COVID-19; he said that Waupun has 208 5' x 12' by 8' cells inches apart from each other with almost 500 people in the same building. He said that if one person got sick, everyone got sick, including guards; when that happens, the administration shuts down the cell halls and stops any movement for people infected with or exposed to COVID. Id. The petitioner

11

recounted the living conditions at Waupun—lack of showers in particular—and reiterated that only in August 2023 had the institution begun to honor law library passes for people with court cases. Id. at 2. He reminded the court that he had written to the court "when Waupun Admin have failed to do there jobs hindering [him] to timely file 2254, wherein because of the media [he] reflect[s] Waupun Admin was understaffed and not cruel and unusual . . . ." Id. at 3. He said that he had not been able to stop thinking about how the people in Waupun have suffered due to the disregard of their rights, how some of them have lost their lives and how some have mental health issues. Id.

It is true that the petitioner *did* write to this court, and not just the October 10, 2023 letter the court already has described. On October 20, 2023, the court received a "Motion Not To Dismiss Petition For Writ of Habeas Corpus" from the petitioner. Dkt. No. 18. Although it appears that this motion originally was three pages long, the court received only two pages. Id. at 1, 2. The petitioner asked the court not to grant the respondent's motion to dismiss. Id. at 1. He told the court that between September 2022 (which was two months before the deadline for filing his petition) and January 2023 (which was two months after the deadline for filing his petition), Waupun had shut down because of the increased COVID numbers. Id. The last sentence on page 1 ends, "wherein no law library passes was." Id. The third page stated that Waupun was "still on lockdown from 3/29/23 wherein national crisis is in effect," and he mentioned the New York Times, Chanel 12, ABC News and Fox 6 News. Id. at 2.

The petitioner included a motion asking the court to "file 30 day extension to get legal loan" from Waupun, saying that he didn't have the money to pay for copies to efile "2254." Id. at 3. That letter was dated November 22,

12

2022—over two weeks after the deadline for filing his federal *habeas* petition— and bore a date stamp from the clerk's office showing it was received on November 28, 2022—three weeks after the petition was due and over three months before the court received the petition. Id. The petitioner also attached a December 1, 2022 letter from the clerk's office advising him that he had no open case pending in the Eastern District of Wisconsin at that time. Id. at 4. The petitioner attached a January 11, 2023 letter he'd sent the court (which the court received on January 17, 2023), asking for a thirty-day extension to file his petition. Id. at 6-7. He claimed that the Clerk of Court had not granted the legal loan extension he requested and explained the delay in getting his legal loan. Id. at 6. He reported that as of January 9, 2023—two months *after* the deadline for him to file his federal *habeas* petition—he had been diagnosed with COVID-19 and was in quarantine for fourteen days. Id. at 7. He said that for all these reasons, he could not attend the law library. Id. The petitioner also attached a January 19, 2023 letter from the clerk, explaining to the petitioner that—still—he did not have a case open in the Eastern District of Wisconsin and advising him that if he wanted to file a *habeas* petition, he could do so. Id. at 9. The letter reflects that the clerk's office sent the petitioner the court's official *habeas* form, and that it advised him that if he didn't have the money to pay the filing fee, he could ask to proceed without paying it; the clerk's office also sent him an application to waive prepaying the filing fee. Id.

Reviewing all the petitioner's letters, pleadings and attachments, the following relevant timeline emerges:

- The petitioner has been in Waupun since February 20, 2018. https://appsdoc.wi.gov/lop/details/detail (for Montreavous L. Gray, #00300537).
- On May 18, 2018, the petitioner (still represented by counsel) appealed his convictions.

13

- On September 4, 2020, the petitioner filed his response to his appellate counsel's no-merit report.
- On August 11, 2021, the Wisconsin Supreme Court denied the petitioner's petition for review.
- On November 28, 2022, the federal court clerk's office received a letter from the petitioner asking the court to extend his deadline to get a legal loan.
- On December 1, 2022, the clerk's office wrote back, telling the petitioner he had no open case in federal court.
- On January 9, 2023, the petitioner was diagnosed with COVID-19.
- On January 11, 2023, the petitioner sent the clerk's office a letter, asking for a thirty-day extension to file his *habeas* petition.
- On January 19, 2023, the clerk's office responded that the petitioner *still* had no federal case; it sent the petitioner a blank *habeas* form and a blank petition to proceed without prepaying the filing fee.
- On March 8, 2023, the court received the petition (although not on the court's official form).

This timeline shows several things. First, it shows that even at the height of the pandemic—in the fall of 2020 and the summer of 2021—the petitioner was able to file documents in state court. Second, it shows that the defendant first communicated with the federal court on November 28, 2022—*after* the deadline for filing his petition had expired. Third, it shows that the petitioner first communicated with the federal court *before* he'd filed a case, and in that communication, he asked the court to do something a federal court does not have the authority to do—extend his deadline for obtaining a legal loan. Only his institution could extend that deadline. Fourth, it shows that two months *after* the November 9, 2022 limitation period expired, the petitioner asked the court to extend it—again, something the court does not have the authority to do.

Nowhere does the petitioner explain why he did not file a federal *habeas* petition between the date on which the Wisconsin Supreme Court denied his petition for review (in August 2021) and the deadline for filing his federal *habeas* petition (November 9, 2022). The petitioner repeatedly has stressed the fact that Waupun has drawn negative attention in the national media for the terrible conditions there. He is correct. On August 19, 2023, the New York Times ran an article that began with this paragraph:

> Prisoners locked in their cells for days on end report walls speckled with feces and blood. Birds have moved in, leaving droppings on the food trays and ice bags handed out to keep inmates cool. Blocked from visiting the law library, prisoners say they have missed court deadlines and jeopardized appeals. Unable to access toilet paper, one prisoner tore his clothing into patches to use for tissue.

Mario Koran, *Inside a 'Nightmare' Lockdown at a Wisconsin Prison*, N.Y. Times, August 19, 2023, updated July 2, 2024. There have been stories on the local FOX news channel, https://www.foxnews.com/us/wisconsin-warden-eight-staff-members-charged-following-probes-inmate-deaths, and in other news outlets. The stories recount the staffing shortages that the petitioner has mentioned. Inmates have died and staff at Waupun—including the former warden—have been charged with misconduct. The conditions at Waupun are reported to be inhumane, and the court regrets that the petitioner and many others housed at Waupun have had to suffer from these conditions. But to be able to pursue federal *habeas* relief, the petitioner had to do one thing: he had to file a petition—even a short, handwritten, incomplete petition—between August 11, 2021 and November 9, 2022. He has not demonstrated that between August 11, 2021 and November 9, 2022, he tried to file a petition but was prevented from doing so by the circumstances he has identified. At best, he has demonstrated that two weeks *after* the limitation period expired, he

15

wrote to the federal court asking for an extension of time to get a legal loan. It was too late for the petitioner to start thinking about his federal *habeas* petition in late November 2022, and he has not explained why he did not file it sooner.

The petitioner has not demonstrated that "extraordinary circumstances" prevented him from timely filing his *habeas* petition, or that he was diligently pursuing his rights. The court will dismiss the petition under 28 U.S.C. §2244(d)(1)(A). Because the court is dismissing the petition, the court will deny as moot the petitioner's motion to appoint counsel.

### III. Certificate of Appealability

Under Rule 11(a) of the Rules Governing Section 2254 Cases, the court must consider whether to issue a certificate of appealability. A court may issue a certificate of appealability only if the applicant makes a substantial showing of the denial of a constitutional right. See 28 U.S.C. §2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 472, 494 (2000) (internal quotations omitted). The court declines to issue a certificate of appealability because no reasonable jurist could debate that the petitioner's petition should be dismissed as untimely under 28 U.S.C. §2244(d).

### IV. Conclusion

The court **DIRECTS** the Clerk of Court to update the docket to reflect that Bradley Mlodzik is the correct respondent.

The court **GRANTS** the respondent's motion to dismiss. Dkt. No. 13.

The court **DENIES AS MOOT** the petitioner's motion to appoint counsel. Dkt. No. 20.

The court **ORDERS** that the petition for writ of *habeas corpus* is **DISMISSED** as time-barred under 28 U.S.C. §2244(d). The clerk will enter judgment accordingly.

The court **DECLINES TO ISSUE** a certificate of appealability.

Dated in Milwaukee, Wisconsin this 12th day of September, 2024.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**