UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MONTREAVOUS GRAY,

        Petitioner,

v.                                  Case No. 23-cv-311-pp

BRADLEY MLODZIK,

        Respondent.

**ORDER DENYING PETITIONER'S MOTION TO RECONSIDER *HABEAS* PETITION 59(A) AND CERTIFICATE OF APPEALABILITY (DKT. NO. 27)**

On September 12, 2024, the court granted the respondent's motion to dismiss the *habeas* petition, dismissed the petition as untimely under 28 U.S.C. §2244(d)(1)(A), denied as moot the petitioner's pending second motion to appoint counsel and declined to issue a certificate of appealability. Dkt. No. 25. The court entered judgment the same day. Dkt. No. 26. On October 16, 2024, the court received from the petitioner a motion to reconsider. Dkt. No. 27. The court will deny that motion.

**I.    Background**

On March 8, 2023, the court received from the petitioner—who is representing himself—a petition for a writ of *habeas corpus* under 28 U.S.C. §2254, challenging his 2015 conviction in Milwaukee County Circuit Court for human trafficking, false imprisonment, intimidation of a victim and intimidation of a witness. Dkt. No. 1. The court screened the petition and allowed it to proceed. Dkt. No. 10. In lieu of answering the petition, the

1

respondent filed a motion to dismiss, arguing that the petition was untimely, dkt. no. 13; the court granted that motion, dkt. no. 25.

On October 16, 2024, the petitioner filed the instant motion to reconsider, asserting that "[he] pursued his right diligently[.]" Dkt. No. 27 at 1. He says that between March 19, 2020 and March 31, 2023, Waupun Correctional Institution was on lockdown. Id. The petitioner explains that during that time, he "was not allowed to leave his room except for over 30 minutes three times a week to shower," and he argues that this constituted the "type of obstacle that may entitle a petitioner to the extraordinary remedy of equitable tolling" because it prevented the timely filing of his petition. Id. at 1-2.

The petitioner argues that Waupun "was subjected to unconstitutional an[d] inhumane conditions" before the institution went into official lockdown, that it subjected incarcerated persons to Sixth Amendment violations and that it did not "officially allow inmate rights to court order deadlines until August 2, 2023." Id. at 2. The petitioner says that he tried to point this out to the court in a previous motion—he maintains that the court "misunderstood" and that he was not allowed "1 hour court deadlines from March 19, 2020 until March 2023." Id. He argues that he wrote to "the courts, trying to point out that this prison was h[i]ndering from filing *habeas* on time;" he says that prison staff told him they'd filed his petition, but that when he asked the court whether the petition had been filed, "Waupun staff failed to file motion wherein they blamed staff shortage or Covid lockdown from, not fully staffed Administration[.]" Id. at 2-3. He says that then the "business office failed to process timely legal loan, wherein Waupun Administration was sourcing out other staff to Run Unconstitutionally Ran prison." Id. at 3.

The petitioner contends that he has been subjected to a miscarriage of justice due to constitutional violations; he says that prosecutorial misconduct is "clear as day," as well as ineffective assistance of counsel "whereby [he has] been denied due process[.]" Id. He asks the court to reconsider its order dismissing his petition and declining to issue a certificate of appealability "wherein this court misunderstood facts of lockdown, court deadlines and Educational Director Bret Helmer memo, and letters [the petitioner] wrote court detailing Waupun Administration was failing to uphold inmate Constitutional Rights of the 6th Amendment." Id. at 3-4. He maintains that "these are extraordinary circumstances" and that "way before the actual lock down Waupun was subjected to Unconstitutional and inhumane conditions depriving all of liberties and Constitutional Rights." Id. at 4.

**II. Analysis**

  A.  Standards

The Federal Rules of Civil Procedure do not explicitly allow for a motion to reconsider. Entm't USA, Inc. v. Moorehead Commc'n, Inc., 897 F.3d 786, 795 (7th Cir. 2018); see Hope v. United States, 43 F.3d 1140, 1142, n.2 (7th Cir. 1994) (stating that "strictly speaking" a motion for reconsideration does not exist under the Federal Rules of Civil Procedure). The Seventh Circuit has said that if a motion to reconsider challenges the merits of the district court's ruling, the district court must analyze the motion either as a motion to alter or amend judgment under Fed. R. Civ. P. 59(e) or a motion for relief from judgment under Fed. R. Civ. P. 60(b). Mares v. Busby, 34 F.3d 533, 535 (7th Cir. 1994); Talano v. Northwestern Mutual Faculty Foundation, Inc., 273 F.3d 757, 760 (7th Cir. 2001) (Technically, a "Motion for Reconsideration" does not exist under the Federal Rules of Civil Procedure. A properly termed Rule 59(e)

motion is a "Motion to Alter or Amend Judgment."). Rule 59(e) allows a court to alter or amend a judgment if the party files the motion "no later than 28 days after the entry of judgment." Fed. R. Civ. P. 59(e). Rule 60(b) is available where a movant files within a "reasonable amount of time" after final order and judgment. Fed. R. Civ. P. 60(b).

"Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." Ahmed v. Ashcroft, 388 F.3d 247, 249 (7th Cir. 2004) (quoting Caisse Nationale de Credit Agricole v. CBI Indus., Inc., 90 F.3d 1264, 1270 (7th Cir. 1986)). "A Rule 59(e) motion does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." United States v. Resnick, 594 F.3d 562, 568 (7th Cir. 2010) (internal quotation marks omitted).

"Altering or amending a judgment under Rule 59(e) is permissible when there is newly discovered evidence or there has been a manifest error of law or of fact." Harrington v. City of Chicago, 433 F.3d 542, 546 (7th Cir. 2006) (citing Bordelon v. Chi. Sch. Reform Bd. of Trs., 233 F.3d 524, 529 (7th Cir. 2000)). "A manifest error is not demonstrated by the disappointment of the losing party. It is the wholesale disregard, misapplication, or failure to recognize controlling precedent." Oto v. Metro. Life Ins. Co., 224 F.3d 601, 606 (7th Cir. 2000) (internal quotation marks omitted). "Newly discovered evidence" is evidence that was discovered after the trial or decision that is material, not merely cumulative or impeaching and such that a new trial probably would result.

4

Cincinnati Life Ins. v. Beyrer, 722 F.3d 939, 955 (7th Cir. 2013) (citation omitted).

Rule 60(b) allows a party to seek relief from an "order" for any of six enumerated reasons, including mistake, inadvertence, newly discovered evidence, fraud or any other reason that justifies relief. Fed. R. Civ. P. 60(b).

B.    Application

The petitioner filed the motion to reconsider thirty-four days after the court entered final judgment. Dkt. No. 27. That means the petitioner did not file the motion within the twenty-eight days allowed by Rule 59(e). But Rule 60(b) allows a party to file his motion within a "reasonable amount of time" after final order and judgment. The court concludes that the petitioner filed his motion to reconsider within a reasonable amount of time after the court entered judgment; it will analyze the petitioner's motion under Rule 60(b).

The petitioner has not demonstrated that the court's September 12, 2024 decision dismissing the petition resulted from mistake, inadvertence, newly discovered evidence, fraud or any other reason that would justify relief under Rule 60(b). The court's ruling was not the result of a mistake—the court did not misunderstand the petitioner's arguments. It disagreed with them, because the issues petitioner described (lock-down, COVID-19, etc.) were not extraordinary. Many incarcerated persons had to confront those same issues. The petitioner has not identified any inadvertence resulting in the court's order. He has not identified any newly discovered evidence; the court's September 12, 2024 order dismissing the petition addressed all the evidence the petitioner discusses in his motion for reconsideration. The petitioner has not identified any fraud. And there are no other reasons that would justify the court's reconsideration of its seventeen-page order of dismissal.

5

The petitioner repeats his request for "remedy of equitable tolling again." Dkt. No. 27 at 2. He asserts that "this court misunderstood facts of lockdown," but he has not explained what facts or evidence he believes the court misunderstood. Id. at 3. He states that he "pursued his right diligently" and that the obstacles created by lockdown prevented him from timely filing his petition, "not just mak[ing] effective litigation difficult." Id. at 1-2. But the court addressed this argument in its September 12, 2024 order—it held that "[s]taff shortages, shutdowns, and modified prison operations are not sufficiently extraordinary to justify equitable tolling." Dkt. No. 25 at 8. The court explained in that order that "the petitioner had over a year—between August 2021 (when the Wisconsin Supreme Court denied his petition for review) and November 29, 2022 (when the limitation expired) to file his petition." Id. at 9. It observed that the petitioner did not explain how lockdown affected his ability to file his petition during that time—he did not explain how frequently he was getting library passes or clearly explain how much library time he received. Id. The petitioner argued that he did not get an hour a week in the library, but the court reached that conclusion based on the petitioner's own statement that incarcerated persons would, "within a 30 day window, be scheduled once a week, for one hour, four hours total per court deadline, to litigate . . . ." Id. (citing Dkt. No. 20 at 2). The petitioner has not explained how the court "misunderstood" that statement.

As stated, the court's September 12, 2024 order of dismissal was seventeen pages long. Dkt. No. 25. The court described in detail the timeline reflected by the petitioner's filings, including the evidence showing that "even at the height of the pandemic—in the fall of 2020 and the summer of 2021—the petitioner was able to file documents in state court," and the evidence showing

6

that he did not communicate with this federal court for the first time until after the deadline for filing his petition had expired. Id. at 13-14. The petitioner's motion to reconsider does not explain why he could not timely file his petition.

## III. Conclusion

The court **DENIES** the petitioner's motion to reconsider. Dkt. No. 27.

Dated in Milwaukee, Wisconsin this 15th day of May, 2025.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**
